# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP ADAMS, | 1:08-cv-00922 AWI SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| | [Doc. 1] |
| KEN CLARK, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation ("CDCR") following a conviction in the Los Angeles County Superior Court for second degree murder. Petitioner is serving an indeterminate term of fifteen years to life.

In the instant petition, Petitioner does not challenge the validity of the state court judgment; rather, he challenges the Board of Parole Hearings ("Board") denial of parole at the January 4, 2007, hearing.

Petitioner filed a state habeas corpus petition in the Los Angeles County Superior Court alleging that the Board's decision is not supported by the evidence because the denial was based on the immutable factors of his commitment offense, and as a result his sentence has been increased in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v.

Washington, 542 U.S. 296 (2004).  He also claimed the Board relied on unconstitutionally vague terms to deny parole and violated the Eighth Amendment's prohibition against cruel and unusual punishment, and the Board has a pattern and practice of denying parole to almost all life inmates. (Exhibit 1, to Answer, Los Angeles County Superior Court, Petition.)

On October 29, 2007, the Superior Court denied the petition in a reasoned decision.  (Id.) The court specifically found that there was some evidence to support the Board's decision to deny parole based on Petitioner's commitment offense, prior criminal history, and prison disciplinary record.  (Id.)  The court acknowledged Petitioner's accomplishments, but found that he still posed an unreasonable risk of danger to the public if released.  (Id.)  In addition, the court rejected Petitioner's claim under Apprendi and Blakely. (Id.)

Thereafter, Petitioner filed a petition in the California Supreme Court, which was summarily denied. (Exhibit 2, to Answer.)

Petitioner filed the instant federal petition for writ of habeas corpus on June 30, 2008. (Court Doc. 1.)  Respondent filed an answer to the petition on November 10, 2008, and Petitioner filed a traverse on December 17, 2008.  (Court Docs. 10, 12.)

## STATEMENT OF FACTS[1]

The record reflects that on January 5, 1980, Petitioner and other crime partners were driving in a van looking to retaliate against an individual named "Mad Eye," who was affiliated with a gang and had allegedly committed acts of violence in the past.  The victim, Curtis Young, was walking with "Mad Eye."  Petitioner and his crime partners, who were all armed, saw "Mad Eye" and shot at him but instead killed the victim.  The victim died as a result of two bullet wounds in the back.  One of the bullets that killed the victim was from a revolver that came from the gun Petitioner had used to fire in the direction of the victim. (Exhibit 1, to Answer.)

---

[1] This statement of facts is derived from the Los Angeles County Superior Court opinion which relied on the transcript of the 2007 parole hearing.

DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in the custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

3

*quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

1    AEDPA requires that we give considerable deference to state court decisions. The state
2    court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's
3    interpretation of its own laws. <u>Souch v. Schaivo</u>, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*,
4    537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).
5    As previously stated, Petitioner filed a state petition for writ of habeas corpus in the Los
6    Angeles County Superior Court, which issued a reasoned denial. (Exhibit 1, to Answer.)
7    Petitioner then filed a petition in the California Supreme Court, which issued a summary denial.
8    (Exhibit 2.)  In such circumstances, this Court "looks through" that decision and presumes it
9    adopted the reasoning of the California Court of Appeal, the last state court to have issued a
10   reasoned opinion. See <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115
11   L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher
12   court agrees with lower court's reasoning where former affirms latter without discussion); <u>see
13   also</u> <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to
14   last reasoned state court opinion in determining whether state court's rejection of petitioner's
15   claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).
16   II.    Review of Petition
17   A parole release determination is not subject to all the due process protections of an
18   adversary proceeding. <u>Pedro v. Oregon Parole Board</u>, 825 F.2d 1396, 1398-99 (9th Cir. 1987); <u>see
19   also</u> <u>Greenholtz</u>, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural
20   protections that particular situations demand). "[S]ince the setting of a minimum term is not part
21   of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not
22   constitutionally mandated, even when a protected liberty interest exists." <u>Pedro</u>, 825 F.2d at
23   1399; <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole
24   board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive
25   advance written notice of a hearing, <u>Pedro</u>, 825 F.2d at 1399; 2) the inmate must be afforded an
26   "opportunity to be heard," <u>Greenholtz</u>, 442 U.S. at 16; 3) if the inmate is denied parole, the
27   inmate must be told why "he falls short of qualifying for parole," <u>Id</u>.; and 4) the decision of the
28   Board must be supported by "some evidence" having an indicia of reliability. <u>Superintendent,</u>

5

Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the Board is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given advance notice of the hearing, he was offered representation by counsel at the hearing, he was granted an opportunity to submit

materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the reasons why parole was denied. See Petition, Exhibit 2.

The California Supreme Court clarified the standard of the review applicable to parole decisions by the Board or Governor in In re Lawrence, 44 Cal.4th 1181 (2008). The applicable standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." Id. at 1212 (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.[2]

At the 2007 parole hearing, the Board found Petitioner unsuitable for parole based on the circumstances of his commitment offense, prior criminal history, behavior during incarceration, unfavorable psychological reports, and questionable parole plans. (Exhibit 2, to Answer.)

Petitioner argues that 1) there was not some evidence to support the Board's finding that the commitment offense was carried out in an especially cruel and callous manner; 2) there was not some evidence to support the finding that Petitioner had not sufficiently participated in self-help programming; 3) the Board incorrectly found that he suffered thirty-three serious rules violation reports; 4) the Board improperly relied on the psychological reports; 5) opposition by the District Attorney's or Sheriff's office does not support the finding that he is currently an

---

[2] To this end, the Court recognized that its prior determination of "a focus upon the egregiousness of the commitment offense to the exclusion of other relevant evidence has proved in practice to obscure the core statutory emphasis upon current dangerousness, the manner in which courts apply the some evidence standard in evaluating the evidentiary value of the gravity of the commitment offense requires some clarification." In re Shaputis, 44 Cal.4th 1241, 1254 (citing Lawrence, 44 Cal.4th at 1213-1214.)

7

1 unreasonable risk of violence; and 6) the Superior Court erred in denying his petition.

2     Upon review of the record in this case, the Superior Court's denial of his state court
3 petition was not an unreasonable application of clearly established Supreme Court authority, nor
4 an unreasonable application of the facts in light of the record before it. 28 U.S.C. §§ 2254(d)(1),
5 (2).

6     The first factor the Board found was the commitment offense was carried out in an
7 especially cruel and callous manner.[3] (Exhibit 2, at 66.)   Petitioner argues that "nothing in the
8 record suggests that the victim suffered after being shot." Under California law, "[s]econd
9 degree murder is defined as the unlawful killing of a human being with malice aforethought, but
10 without the additional elements-i.e., willfulness, premeditation, and deliberation-that would
11 support a conviction for first degree murder." People v. Nieto Benitez, 4 Cal.4th 91 (1992).  By
12 definition all second degree murders "involve some callousness-i.e, lack of emotion or sympathy,
13 emotional insensitivity, indifference to the feelings and suffering of others." In re Scott, 119
14 Cal.App.4th 871, 891 (2004) (citing In re Smith, 114 Cal.App.4th 343, 366 (2003).

15     Petitioner's argument is persuasive.  The Court agrees with the conclusion that the
16 circumstances of the commitment offense were not sufficient in and of themselves to justify the
17 finding that Petitioner currently poses an unreasonable danger of violence if released.  Neither the
18 Board or state court cited to factual circumstances demonstrating that the second degree murder
19 was committed in an especially cruel and callous manner to distinguish it from any other second
20 degree murder. In re Smith, 114 Cal.App.4th at 366.  Rather, the factual circumstances of the
21 murder indicate that in retaliation for a prior rival gang-related murder, Petitioner sought out to

---

[3] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole regarding the committed offense.  The factors to be considered include:
  (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
  (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
  (C) The victim was abused, defiled or mutilated during or after the offense.
  (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
  (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

kill "Mad Eye" and instead shot and killed the young victim, who was with the purported target. It is undisputed that the victim suffered from two gunshot wounds to the back and died as a result of massive hemorrhage.  There was evidence that witnesses heard approximately five to six gunshots.  The shooting was reported at approximately 11:30 p.m. and the victim died at approximately 12:14 a.m.  Thus, it appears the gunshot wounds killed the victim rather quickly. Despite having killed an unintended victim, the factual circumstances of the commitment offense do not support the finding that it was carried out in an "especially cruel and callous manner" as defined by California law.  See In re Burns, 136 Cal.App.4th 1318, 1327-1328 (2006) (some evidence indicated callous disregard for suffering where the victim was shot and left in an isolated spot, appeared to have attempted to obtain help, and was pronounced dead approximately four hours after having been shot); In re Smith, 114 Cal.App.4th at 367 (no evidence that the inmate had prolonged pain or suffering of the victim after shot three times in the head).

However, the Board's denial was not based exclusively on the commitment offense, and there is some evidence to support the Board's additional findings that Petitioner presents a threat to public safety.  The second factor the Board cited was Petitioner's prior criminal history.  It is undisputed that Petitioner suffered several convictions as a juvenile including burglary, robbery, assault with a deadly weapon, and grand theft.  15 Cal.Code Regs. § 2402(c)(2).  At the age of thirteen, he went to juvenile camp.  Then "[i]n 1977, [he was] arrest[ed] for attempted murder, attempted kidnap, robbery, tried before, tried in a Court of law as an adult, convicted of 211 robbery, and ... committed to the California Youth Authority for four years, did three." (Exhibit 2, at 67-68.)  The instant offense occurred just four months after his release, at the age of twenty-one.  (Id. at 68.)  Based on Petitioner's criminal history beginning at an early age, there is some evidence to support the Board's finding that he engaged in a escalating pattern of criminality.

The third factor relied on by the Board is Petitioner's institutional behavior.  15 Cal. Code Regs. § 2402(c)(6).  The 2007 panel found that Petitioner received thirty-three CDC-115 serious rules violations; however, a previous panel found only fifteen. (Exhibit 2, at 38.)  The last rules violation occurred on January 28, 2000, for mutual combat.  (Id.)  The Superior Court found

9

1  "some evidence to support the Board's finding that the Petitioner had as many as 30 115's,
2  including mutual combat, while in prison." (Exhibit 1.)  Petitioner cites and submits a Life
3  Prisoner Evaluation dated October 2006, which indicates that he had received only three rules
4  violation reports. (Petition, at App. C.)  However, both the 2003 and 2005 Board hearing panels
5  cited fifteen serious rules violation, and the psychological evaluation completed after the 2007
6  parole consideration hearing indicates that Petitioner has received "multiple" rules violation
7  reports. (Petition, App. E, at 5, App. K.)  The 2007 Board recognized the previous panel's
8  citation of only fifteen violations, however it counted thirty-three, and Petitioner voiced no
9  objection to such finding.  The Los Angeles County Superior Court agreed with that
10 determination, and Petitioner has failed to demonstrate by clear and convincing evidence that the
11 state court's factual determinations are incorrect or unreasonable.  Rather, Petitioner merely
12 disagrees with the weight the Board assigned to the evidence, which is insufficient to warrant
13 federal habeas relief.

14         In any event, even if there were only three rules violation reports, it is undisputed that the
15 last occurred in 2000 for mutual combat, and he received two separate and independent
16 violations in 1996 for threatening staff and mutual combat, evidencing Petitioner's continued
17 propensity toward violent behavior and inability to handle problems in a non-violent manner.[4]
18 Based on the foregoing, there is some evidence to support the Board's finding that Petitioner's
19 violent institutional behavior demonstrates that he continues to remain a risk to public safety.

20         The Board also reviewed the most recent psychological report by Marianne Davis, which
21 was prepared as an addendum to the previous psychological evaluations in 2003 and 2005.
22 (Exhibit 2, at 40.)  All of the reports expressed concern regarding Petitioner's violence and
23 assessed that he is a very high risk for future violence given his criminal history and institutional
24 behavior. (Exhibit 2, at 40, 54.)  This information was properly considered pursuant to § 2402(b)
25 as the Board is allowed to consider "[a]ll relevant, reliable information available to the panel"
26 which includes information on a prisoner's "past and present mental state." See Cal. Code Reg.

---

[4] A CDC-115 (Rules Violation Report) documents misconduct which is a violation of law or which is not minor in nature. Cal. Code. Regs., tit. 15 § 3312(a)2), (a)(3).

1 tit. 15, § 2402(b). Psychological reports are relevant evidence which the Board is allowed to
2 review and rely upon in determining whether a prisoner is suitable for parole. Rosa v. Nielsen,
3 428 F.3d 1229, 1232-1233 (9th Cir. 2005 (per curiam). Given that all of the psychological reports
4 found Petitioner to be at a *high risk of violence* if released, there is some evidence to support the
5 Board's finding that he is unsuitable for parole.

6 The Board also expressed concern regarding Petitioner's desire to reside with his brother
7 if paroled, given his brother's prior criminal conviction and incarceration for possession and sale
8 of cocaine. (Exhibit 2, at 43.) The Board noted that Petitioner had secondary plans to reside
9 with his mother, nonetheless his expressed preference was to reside with his brother, which was
10 of legitimate concern to the Board given his prior criminal history.[5] The Board recommended
11 that Petitioner might want to look into some other options for his residential plans. (Exhibit 2, at
12 55.)

13 The Board made note of opposition letters from the District Attorney's and Sheriff's
14 office. (Exhibit 2, at 56.) As recognized by the Superior Court, although this factor alone is not
15 sufficient to deny parole, it may be and was considered as part of the overall finding whether
16 Petitioner presents a present risk to public safety if released. Cal. Pen. Code § 3042(a) and (f)(3),
17 and Cal. Code Reg. tit. 15, § 2402(b).

18 Pursuant to section 2402(d), the Board also considered the positive factors and
19 commended Petitioner for his involvement in self-help therapy programs including participation
20 in anger management in 2006, breaking the barriers, Bible study, and vocational work programs.
21 However, on balance the positive aspects did not outweigh the factors of unsuitability. (Exhibit
22 2, at 56-57.)

23 The Board's findings are supported by "some evidence" and it cannot be said that the
24 state court's resolution of Petitioner's claims "resulted in a decision that was contrary to, or
25 involved an unreasonable application of, clearly established Federal law, as determined by the
26 Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable

---

[5] Indeed, the Board was unsure whether residency with an individual who has a criminal history would even be allowed.

1  determination of the facts in light of the evidence before the state court." 28 U.S.C.
2  §§ 2254(d)(1), (2).

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    February 6, 2009              /s/ Sandra M. Snyder
                                  UNITED STATES MAGISTRATE JUDGE